# EXHIBIT B

*Keith Yackey*

## CONTRACTOR AGREEMENT

The terms and conditions of this CONTRACTOR AGREEMENT ("Agreement"), dated **8/20**, 2010, are stated below, effective as of the date executed, by and between Education Management Services, LLC, a Delaware limited liability company ("Company") with offices in San Antonio, Texas, and Real Instrux, Inc. and Keith Yackey (collectively "Contractor"); Company and Contractor are sometimes collectively referred to herein as "Parties" and separately as "Party".

### RECITALS:

WHEREAS, Contractor will be retained by the Company as a Master Mentor;

WHEREAS, Contractor may also render services for certain affiliates of the Company, including but not limited, to the entities listed on Exhibit A, attached hereto, and any other entities which may be designated by the Company (collectively referred to as "Affiliates") and the terms and covenants hereof shall also apply to the Affiliates;

WHEREAS, Contractor is not precluded from working for other companies at the same time Contractor works for the Company. Contractor is not required to work full-time for the Company and Contractor is not restricted from making Contractor's services available to the public;

WHEREAS, as a result of Contractor's relationship with the Company, Contractor will have access to Confidential Information (as later defined) of the Company and/or Affiliates, which is unique and has been developed and effectively applied by the Company and/or Affiliates and constitutes a valuable and essential asset of the business of the Company and/or Affiliates;

WHEREAS, as a result of Contractor's relationship with the Company, Contractor will participate in, be exposed to and have access to the Confidential Information, including but not limited to, certain product and business development plans and ideas of the Company and/or Affiliates which are of critical importance to the growth and success of the Company and/or Affiliates; and

WHEREAS, in order to protect the Confidential Information and business goodwill of the Company and/or Affiliates, either of which interest is in itself sufficiently valuable to justify protection by the Company and/or Affiliates, Contractor acknowledges the necessity of certain restrictions being placed on the activities of Contractor during and after termination of his or her business relationship with the Company;

WHEREAS, Company will refrain from setting required work hours for Contractor;

WHEREAS, Contractor will be paid on a flat fee basis. Company will not reimburse Contractor for any business and/or traveling expenses under any circumstances;

NOW, THEREFORE, in consideration of the foregoing premises, the mutual covenants and agreements contained herein, and for good and valuable consideration, the receipt and

sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **COMPENSATION, TERM AND DUTIES.**

    1.1 **Independent Contractor.** Subject to the terms and conditions of this Agreement, the Company hereby engages the Contractor as an independent contractor to perform the services set forth herein, and the Contractor hereby accepts such engagement.

    1.2 **Compensation.** Contractor's compensation under this Agreement shall be as provided on Exhibit B, attached hereto and made part of this Agreement, or as otherwise agreed by the Parties from time to time.

    1.3 **Term.** This Agreement shall commence on the date as set forth above and shall continue for a period of six (6) months (the "Term"). The Term of this Agreement may be extended for additional periods of time only upon the mutual agreement of all Parties.

    1.4 **Termination.** If the Contractor is convicted of any crime or offense, fails or refuses to comply with the written policies or reasonable directive of the Company, is guilty of serious misconduct in connection with the performance hereunder, or materially breaches provisions of this Agreement, the Company at any time may terminate the engagement of the Contractor immediately and without prior written notice to the Contractor.

    1.5 **Duties.** Contractor's duties relating to Company and/or Affiliates shall be as provided in Exhibit C, attached hereto and made part of this Agreement, or as otherwise agreed by the Parties from time to time.

2. **CONFIDENTIALITY.**

    2.1 **Definition of Confidential Information.** For purposes of this Agreement, "Confidential Information" means any and all information or documentation of the Company and/or Affiliates concerning, related to or containing any proprietary, financial, technical data, billing procedures, management, personnel administration, trade secrets or know-how information of the Company and/or Affiliates, including, but not limited to, information concerning or related to research, product plans, seminars, Armando Montelongo Brand, Armando Montelongo Brand phrases (including, but not limited to, "Decades into Days" and "Financial GPS"), products and/or services provided by the Company and/or Affiliates to its clients and/or customers, customer lists, customers, client lists, clients, identification and/or personal information of customers and/or clients of the Company and/or Affiliates, markets, seminar sites, seminar topics and/or literature, books, manuals, DVD's, CD's, contractors, vendors, suppliers, accountants, bookkeepers, attorneys, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, inventory, equipment, facilities, leases, marketing, insurance, billing, payroll, finances, financial statements, tax returns or tax related documents, cost reports and other financial information, contract proposals, bidding information, rate and fee structures, business development plans,

policies and procedures developed as part of a business plan, and any other business and/or personal information of the Company and/or Affiliates and their customers and/or clients.

2.2 **Contractor's Acknowledgment.** By signing this Agreement, Contractor acknowledges and agrees:

2.2.1 that Contractor will have access to and gain knowledge of the Confidential Information of the Company and/or Affiliates, including but not limited to, confidential, proprietary information or trade secret information, the identity lists and/or descriptions of any clients, customers or suppliers wherever located, business development plans, financial statements, cost reports and other financial information, contract proposals, rate and fee structures, policies and procedures developed as part of a confidential business plan, and research systems and procedures;

2.2.2 that the services and/or products provided by the Company and/or Affiliates to its clients and/or customers is highly specialized and that information regarding such services and/or products is highly confidential; that the Confidential Information is not generally known; that the Company has provided or may, after the execution of this Agreement, provide Contractor with Confidential Information; and that the value of this information cannot adequately be compensated by damages in an action at law; and

2.2.3 that the Company and/or Affiliates has earned goodwill with its clients, customers, suppliers, vendors, employees, contractors, etc., the Company's and/or Affiliates' goodwill is valuable, and that the value of this goodwill cannot adequately be compensated by damages in an action at law.

2.3 **Nondisclosure of Confidential Information.** Contractor agrees to never use or disclose, directly or indirectly, for any reason whatsoever or in any way other than at the direction of the Company and/or Affiliates or after receipt of the prior written consent of the Company and/or Affiliates, any Confidential Information of the Company and/or Affiliates. Specifically, Contractor agrees not to utilize, disclose, copy, duplicate or publish all or any part of, nor lend nor permit the disclosure, copying or duplication or publication of all or any part of the Confidential Information of the Company and/or Affiliates (including but not limited to books, records, client lists, customer lists, or any other documents or materials related to the business of the Company and/or Affiliates) to any person or entity, except with the express prior and written consent of the Company and/or Affiliates. Further, Contractor shall maintain the confidentiality of all Confidential Information of the Company and/or Affiliates for the sole use and benefit of the Company and/or Affiliates. Finally, upon the expiration of Contractor's business relationship with the Company, Contractor shall not say, advertise, or in any form or fashion announce, that he worked for the Company and/or Affiliates or the Armando Montelongo Brand, and Contractor shall not use in any form or fashion any pictures or

other media which contains any reference to the Armando Montelongo Brand, including but not limited to, any images of Armando Montelongo.

2.4   **Right to Injunction.** The parties hereto acknowledge that the services to be rendered by the Contractor under this Agreement and the rights and privileges granted to the Company under the Agreement are of a special, unique, unusual, and extraordinary character which gives them a particular value, the loss of which cannot be reasonably or adequately compensated by damages in any action of law, and the breach by the Contractor of any of the provisions of this Agreement will cause the Company irreparable injury and damage. The Contractor expressly agrees that the Company shall be entitled to injunctive and other equitable relief in the event of, or to prevent, a breach of any provision of this Agreement by the Contractor. Resort to such equitable relief, however, shall not be construed to be a waiver of any other rights or remedies that the Company may have for damages otherwise. The various rights and remedies of the Company under this Agreement or otherwise shall be construed to be cumulative, and no one of them shall be exclusive of any other or of any right or remedy allowed by law.

3.   **NON-SOLICITATION AND NON-CIRCUMVENTION.**

3.1   **Acknowledgment.** Contractor understands and agrees that a significant inducement for the Company's and/or Affiliates' agreement to provide access to its Confidential Information and its goodwill, after the execution of this Agreement, is the Parties' mutual desire that Contractor learn or continue to learn relevant aspects of the Company's and/or Affiliates' Confidential Information and be able to use these, in conjunction with the Company's and/or Affiliates' goodwill, to further the Company's and/or Affiliates' business interests. Contractor further acknowledges and understands that Company would not provide Contractor access to its Confidential Information without Contractor's agreements set forth in Section 3. Accordingly, in exchange for the Company's and/or Affiliates' promise herein to provide, and provision of, such Confidential Information, Contractor agrees to the restrictions imposed herein below, including non-solicitation and non-circumvention. These are severable covenants. Contractor acknowledges that they are reasonable in view of the nature of the Company's and/or Affiliates' business and the agreed need to protect Company's and/or Affiliates' Confidential Information to which Contractor would otherwise not be entitled. Further, should any of these covenants be found unenforceable as written, they may be reformed and, as reformed, enforced. Finally, Contractor agrees that the Company and/or Affiliates, in addition to any other remedies provided by law, shall have the right to enforce these obligations by injunction and to seek recovery of its costs and attorneys fees incurred in enforcing them.

3.2   **Non-Solicitation.** Except as the Company and/or Affiliates may waive or modify in its sole discretion, during the term of the business relationship with the Company and/or Affiliates and for a period of twenty-four (24) months following the effective termination date of Contractor's business relationship with the Company and/or Affiliates, for any reason, regardless of whether initiated by Contractor or the Company and/or Affiliates, Contractor shall not solicit, induce, or attempt to induce, any past or

current supplier, client or customer of the Company and/or Affiliates with whom Contractor dealt, had contact or gained Confidential Information, or any employee or contractor of the Company and/or Affiliates, as the case may be, to:

    3.2.1    cease or otherwise modify its doing business, in whole or in part, with or through the Company and/or Affiliates; or

    3.2.2    do business with any other person, firm, partnership, corporation, or other entity which provides products or performs services materially similar to or competitive with those provided by the Company and/or Affiliates or accept any request from any such person or entity to do so.

3.3    **Non-Circumvention.** Contractor will not take any action to directly or indirectly interfere with, circumvent or attempt to circumvent, avoid, by-pass, or obviate the interest of Company and/or Affiliates with any individual or entity identified by Company and/or Affiliates as a client or potential client at any time during Contractor's business relationship with Company and/or Affiliates and for a period of twenty-four (24) months following the effective termination date of Contractor's business relationship with Company and/or Affiliates, for any reason, or otherwise benefit, either financially or otherwise from any Confidential Information (as defined in this Agreement) supplied to Contractor by Company and/or Affiliates to change, increase or avoid directly or indirectly payment of established or to be established fees or commissions, without the specific written approval of Company and/or Affiliates. Any violation of this condition shall be deemed an attempt to circumvent Company's and/or Affiliates' business relationship with such individual or entity, and Contractor shall be liable for damages in favor of Company and/or Affiliates.

3.4    **Tolling of Covenant Periods.** The time period provided by Section 3 shall not include, and shall be extended beyond, any time during which Contractor is failing to comply with any provision of this Agreement.

4.    **ARBITRATION.**

4.1    **Disputes Will be Arbitrated.** Any controversy between Contractor and the Company and/or Affiliates, or any of its respective owners, employees, contractors, officers, agents, clients, subsidiaries, affiliates, arising from or in any way related to this Agreement, Contractor's business relationship with the Company and/or Affiliates, or the termination of Contractor's business relationship with the Company and/or Affiliates, shall be resolved exclusively by final and binding arbitration administered by the American Arbitration Association under its rules then applicable to the dispute. Any arbitration shall take place only in Texas, or as otherwise mutually agreed by the Parties.

5.    **MISCELLANEOUS.**

5.1    **Severability.** If any provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future laws effective during the term hereof, such

provision shall be fully severable; and this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part hereof; and the remaining provisions hereof shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance herefrom. Notwithstanding any law to the contrary, the severance of any illegal, invalid or unenforceable provision shall not affect Company's and/or Affiliates' right to obtain money damages for Contractor's violation of any remaining enforceable provision(s). Furthermore, in lieu of such illegal, invalid, or unenforceable provisions there shall be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and be legal, valid, and enforceable and that shall not be more restrictive than the one severed herefrom.

5.2   **Noninterference With Third-Party Rights**. Contractor warrants and represents that, in entering into this Agreement and performing the obligations imposed by this Agreement, Contractor is not violating any contractual, fiduciary, or other legal duty which Contractor may owe to some other person with respect to confidential information or relationship. The Company and/or Affiliates have no interest in using any other company's or person's proprietary, confidential, or trade secret information in an unlawful manner. Contractor agrees that Contractor will not misapply the property of any other company or person to such information by accepting retainment by the Company and/or Affiliates or in the course of the relationship with the Company and/or Affiliates.

5.3   **Compliance With Laws.**

    5.3.1   Each Party warrants and represents that it will comply and will cause its affiliates, contractors and sublicensees to comply with all applicable laws in connection with the performance of its obligations and other activities pursuant to this agreement, including without limitation, truth in product promotion and advertising laws, business opportunity statutes, The Federal Trade Commission Act of 1914, as amended, and U.S. Patent and Trademark statutes in its marketing, distributing, and selling efforts in connection with this Agreement.

    5.3.2   Notwithstanding anything to the contrary in this Agreement, neither Party nor any of its affiliates shall be required to take, or shall be penalized for not taking, any action that is not in compliance with such Party's ethical business practices and policies or that such Party reasonably believes is not in compliance with applicable laws.

5.4   **Indemnification.** In addition to any other remedies available to the Company under this Agreement, or at law or in equity, Contractor shall indemnify, defend and hold harmless the Company and Related Persons with respect thereto against and with respect to any and all claims, costs, damages, losses, expenses, obligations, liabilities, recoveries, suits, causes of action and deficiencies, including interest, penalties and reasonable attorneys' fees and expenses that such indemnitees shall incur or suffer, which arise, result from or relate to any breach of, or failure by the Contractor to perform, any of its representations, warranties, covenants or agreements in this Agreement. For purposes of this Agreement, "*Related Persons*" means all past, present and future directors, officers,

members, managers, stockholders, employees, controlling persons, agents, professionals, attorneys, accountants, Affiliates, lenders or representatives of the Company.

5.5   **Independent Contractor Status.** This Agreement shall not render Contractor an employee, partner, agent of, or joint venture with the Company and/or Affiliates for any purpose. Contractor is and will remain an independent contractor in his or her relationship to the Company and/or Affiliates. The Company shall not be responsible for withholding taxes with respect to the Contractor's compensation hereunder. Contractor understands that the Company and/or Affiliates shall make no deduction for federal or state taxes from the compensation due to Contractor under this Agreement. Contractor acknowledges and understands that he or she is solely and totally responsible for the payment of all such taxes without reimbursement from the Company and/or Affiliates. Contractor shall have no claim against the Company and/or Affiliates hereunder or otherwise for vacation pay, sick leave, retirement benefits, social security, worker's compensation, health or disability benefits, unemployment insurance benefits, or employee benefits of any kind. The Company will not control or direct the conduct or manner of Contractor's provision of services under this Agreement but is interested solely in the results of the services which Contractor is to obtain in accordance with the Company's expectations and assignments. The manner and means by which Contractor carries out the terms of this Agreement are within Contractor's sole discretion, and Contractor has complete and total authority to control and direct the performance of his or her services, subject only to Company's right to secure satisfactory completion of the work assigned under the terms of this Agreement. Contractor agrees to notify Company in writing as soon as possible of any actions or conditions by Company which Contractor may believe may result in Company attempting to assert any direct control over the manner in which Contractor provides his or her services. Contractor shall not have any right or authority, without the express written consent of Company, to make any contract in the name of, or binding on, the Company, nor to otherwise bind Company or transact any business in Company's name or on its behalf, and, unless expressly consented to in writing by Company, Contractor shall not make any representations to anyone as having such right or authority.

5.6   **Substance Screening.**   The Contractor agrees to complete a pre-engagement substance screening at the Company's expense.

5.7   **Background Investigation.** The Contractor agrees to authorize the Company to conduct a criminal background investigation at the Company's expense.

5.8   **Conflicts of Interest.** The Contractor represents that he or she is free to enter into this Agreement, and that this engagement does not violate the terms of any agreement between the Contractor and any third party. Further, the Contractor, in rendering his or her duties shall not utilize any invention, discovery, development, improvement, innovation, or trade secret in which he or she does not have a proprietary interest. During the term of this Agreement, the Contractor shall devote as much of his or her productive time, energy and abilities to the performance of his or her duties hereunder as is necessary to perform the required duties in a timely and productive manner. The

Contractor is expressly free to perform services for other parties while performing services for the Company.

5.9   **Survival of Obligations**. The covenants in this Agreement shall survive termination of Contractor's retainment by the Company, regardless of who causes the termination or under what circumstances.

5.10   **Notices**. All notices required under this Agreement shall be made in writing and shall be deemed given (1) during Contractor's retainment, when delivered via interoffice mail or electronic mail and (2) following termination of Contractor, when posted by certified mail, return receipt requested, with proper postage prepaid and properly addressed, to the applicable Party's last known address.

5.11   **Related Parties**. This Agreement shall inure to the benefit of, and be binding upon, the Company and its parents or subsidiaries, joint ventures, clients, and affiliates, together with their successors and assigns, and Contractor, together with Contractor's executor, administrator, personal representative, heirs, and legatees.

5.12   **Entire Agreement**. This Agreement represents the entire Agreement of the Parties. This Agreement merges and supersedes all prior and contemporaneous agreements, undertakings, covenants, or conditions, whether or oral or written, express or implied, between the Company and Contractor.

5.13   **Choice of Law**. The waiver of the breach of any term or condition of this Agreement will not be deemed to constitute waiver of any other subsequent breach of the same or any other term or condition. Unless prohibited by applicable law, this Agreement shall be governed by, and interpreted according to, the laws of the United States of America and the laws of the State of Texas.

5.14   **Certificate of Understanding**. Contractor certifies that: (i) he/she has received a copy of this Agreement for review and study before being asked to sign it, (ii) that he/she has the opportunity to consult with an attorney before signing, (iii) has had sufficient opportunity to ask questions regarding the Agreement and has received satisfactory answers from Company, and (iv) understands the Agreement and his/her obligations under this Agreement.

5.15   **Counterparts**. This Agreement may be executed in multiple counterparts (including copies of original signatures sent by facsimile transmission or by electronic transmission in portable document format (pdf)), each of which shall be deemed an original and all of which together constitute one and the same instrument.

[Signatures on Following Page]

IN WITNESS WHEREOF, Contractor and Company have entered into and executed this Agreement as of the first date stated above.

**CONTRACTOR:**

REAL INSTRUX, INC.

By: _____
Name: KEITH YACKEY
Title: PRESIDENT

KEITH YACKEY

_____
Printed Name: KEITH YACKEY

**COMPANY:**

EDUCATION MANAGEMENT SERVICES, LLC.

By: _____ 9-14-10
Name: _____
Title: _____

0795643.01

## Exhibit A

### Affiliates of Education Management Services, LLC

Armando Montelongo Companies, Inc.
Internet Education, LLC
Lead Generation and Marketing, LLC
License Branding, LLC
Performance Advantage Group, Inc.
Real Estate Training International, LLC (Armando Montelongo Seminars)

## Exhibit B

### Compensation

1. Contractor will receive a flat fee of $3500 as payment for each weekend or series of completed mentoring relationships as contemplated by the Parties under this Agreement.

2. Contractor will be not be reimbursed for any business and/or traveling expenses.

## Exhibit C

**DUTIES:** The Contractor will be retained as a Master Mentor. Such Master Mentor will counsel clients/students in various real estate topics, techniques, and issues. Contractor reserves the right to control the terms and methods of the Master Mentor relationship. Contractor shall fulfill any other duties reasonably requested by the Company and agreed to by the Contractor.