# EXHIBIT C

# CONTRACTOR AGREEMENT

The terms and conditions of this CONTRACTOR AGREEMENT ("Agreement"), dated 1/22/13 are stated below, effective as of the date executed, by and between Education Management Services, LLC, a Delaware limited liability company with offices in San Antonio, Texas ("Company"), and **Keith Yackey**("Contractor"); Company and Contractor are sometimes collectively referred to herein as "Parties" and separately as "Party".

## RECITALS:

WHEREAS, Contractor will be retained by the Company as a **MENTOR**;

WHEREAS, Contractor may also render services for certain affiliates of the Company, including but not limited, to the entities listed on Exhibit A, attached hereto, and any other entities which may be designated by the Company (collectively referred to as "Affiliates") and the terms and covenants hereof shall also apply to the Affiliates;

WHEREAS, as a result of Contractor's relationship with the Company, Contractor will have access to Confidential Information (as later defined) of the Company and/or Affiliates, which is unique and has been developed and effectively applied by the Company and/or Affiliates and constitutes a valuable and essential asset of the business of the Company and/or Affiliates;

WHEREAS, as a result of Contractor's relationship with the Company, Contractor will participate in, be exposed to and have access to the Confidential Information, including but not limited to, certain product and business development plans and ideas of the Company and/or Affiliates which are of critical importance to the growth and success of the Company and/or Affiliates; and

WHEREAS, in order to protect the Confidential Information and business goodwill of the Company and/or Affiliates, either of which interest is in itself sufficiently valuable to justify protection by the Company and/or Affiliates, Contractor acknowledges the necessity of certain restrictions being placed on the activities of Contractor during and after termination of his or her business relationship with the Company;

NOW, THEREFORE, in consideration of the foregoing premises, the mutual covenants and agreements contained herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## 1.   COMPENSATION, TERM AND DUTIES.

1.1   <u>Independent Contractor</u>. Subject to the terms and conditions of this Agreement, the Company hereby engages the Contractor as an independent contractor to perform the services set forth herein, and the Contractor hereby accepts such engagement.

1.2   <u>Compensation</u>. Contractor's compensation under this Agreement shall be as provided on Exhibit B, attached hereto and made part of this Agreement, or as otherwise

Contractor Initial
Contract for KEITH YACKEY

agreed by the Parties from time to time. Company's covenant to pay is conditioned upon Contractor's duty to providing a W9 form from the Internal Revenue Service as more fully described in Exhibit B.

1.3.    **Term**. This Agreement shall commence on the date as set forth above and shall continue for a period of six (6) months (the "Term"). The term of this Agreement may be extended for additional periods of time only upon the mutual agreement of all Parties. Notwithstanding the preceding sentences of this Section 1.3, each Party shall have the right to terminate this Agreement at will at any time, with or without cause and for no cause upon written notice to the other Party.

1.4    **Duties**. Contractor's duties shall be to be a **MENTOR**. Such duties are further detailed in Exhibit C attached hereto.

2.    **CONFIDENTIALITY.**

2.1    **Definition of Confidential Information**. For purposes of this Agreement, "Confidential Information" means any and all information or documentation of the Company and/or Affiliates concerning, related to or containing any proprietary, financial, technical data, billing procedures, management, personnel administration, trade secrets or know-how information of the Company and/or Affiliates, including, but not limited to, information concerning or related to research, product plans, seminars, Armando Montelongo Brand, Armando Montelongo Brand phrases (including, but not limited to, "Decades into Days" and "Financial GPS"), products and/or services provided by the Company and/or Affiliates to its clients and/or customers, customer lists, customers, client lists, clients, identification and/or personal information of customers and/or clients of the Company and/or Affiliates, markets, seminar sites, seminar topics and/or literature, books, manuals, DVD's, CD's, contractors, vendors, suppliers, accountants, bookkeepers, attorneys, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, inventory, equipment, facilities, leases, marketing, insurance, billing, payroll, finances, financial statements, tax returns or tax related documents, cost reports and other financial information, contract proposals, bidding information, rate and fee structures, business development plans, policies and procedures developed as part of a business plan, and any other business and/or personal information of the Company and/or Affiliates and their customers and/or clients.

2.2    **Contractor's Acknowledgment**. By signing this Agreement, Contractor acknowledges and agrees:

2.2.1    that Contractor will have access to and gain knowledge of the Confidential Information of the Company and/or Affiliates, including but not limited to, confidential, proprietary information or trade secret information, the identity lists and/or descriptions of any clients, customers or suppliers wherever located, business development plans, financial statements, cost reports and other financial information, contract proposals, rate and fee

Contractor Initial
Contract for KEITH YACKEY

structures, policies and procedures developed as part of a confidential business plan, and research systems and procedures;

2.2.2    that the services and/or products provided by the Company and/or Affiliates to its clients and/or customers is highly specialized and that information regarding such services and/or products is highly confidential; that the Confidential Information is not generally known; that the Company has provided or may, after the execution of this Agreement, provide Contractor with Confidential Information; and that the value of this information cannot adequately be compensated by damages in an action at law; and

2.2.3    that the Company and/or Affiliates has earned goodwill with its clients, customers, suppliers, vendors, Contractors, contractors, etc., the Company's and/or Affiliates' goodwill is valuable, and that the value of this goodwill cannot adequately be compensated by damages in an action at law.

2.3    **Nondisclosure of Confidential Information.** Contractor agrees to never use or disclose, directly or indirectly, for any reason whatsoever or in any way other than at the direction of the Company and/or Affiliates or after receipt of the prior written consent of the Company and/or Affiliates, any Confidential Information of the Company and/or Affiliates. Specifically, Contractor agrees not to utilize, disclose, copy, duplicate or publish all or any part of, nor lend nor permit the disclosure, copying or duplication or publication of all or any part of the Confidential Information of the Company and/or Affiliates (including but not limited to books, records, client lists, customer lists, or any other documents or materials related to the business of the Company and/or Affiliates) to any person or entity, except with the express prior and written consent of the Company and/or Affiliates. Further, Contractor shall maintain the confidentiality of all Confidential Information of the Company and/or Affiliates for the sole use and benefit of the Company and/or Affiliates. Finally, upon the expiration of Contractor's business relationship with the Company, Contractor shall not say, advertise, or in any form or fashion announce, that he worked for the Company and/or Affiliates or the Armando Montelongo Brand, and Contractor shall not use in any form or fashion any pictures or other media which contains any reference to the Armando Montelongo Brand, including but not limited to, any images of Armando Montelongo.

3.    **NON-SOLICITATION AND NON-CIRCUMVENTION.**

3.1    **Acknowledgment.** Contractor understands and agrees that a significant inducement for the Company's and/or Affiliates' agreement to provide access to its Confidential Information and its goodwill, after the execution of this Agreement, is the Parties' mutual desire that Contractor learn or continue to learn relevant aspects of the Company's and/or Affiliates' Confidential Information and be able to use these, in conjunction with the Company's and/or Affiliates' goodwill, to further the Company's and/or Affiliates' business interests. Contractor further acknowledges and understands that Company would not provide Contractor access to its Confidential Information

Contractor Initial
Contract for KEITH YACKEY

without Contractor's agreements set forth in Section 3. Accordingly, in exchange for the Company's and/or Affiliates' promise herein to provide, and provision of, such Confidential Information, Contractor agrees to the restrictions imposed herein below, including non-solicitation and non-circumvention. These are severable covenants. Contractor acknowledges that they are reasonable in view of the nature of the Company's and/or Affiliates' business and the agreed need to protect Company's and/or Affiliates' Confidential Information to which Contractor would otherwise not be entitled. Further, should any of these covenants be found unenforceable as written, they may be reformed and, as reformed, enforced. Finally, Contractor agrees that the Company and/or Affiliates, in addition to any other remedies provided by law, shall have the right to enforce these obligations by injunction and to seek recovery of its costs and attorneys fees incurred in enforcing them.

3.2     **Non-Solicitation**. Except as the Company and/or Affiliates may waive or modify in its sole discretion, during the term of the business relationship with the Company and/or Affiliates and for a period of twenty-four (24) months following the effective termination date of Contractor's business relationship with the Company and/or Affiliates, for any reason, regardless of whether initiated by Contractor or the Company and/or Affiliates, Contractor shall not solicit, induce, or attempt to induce, any past or current supplier, client or customer of the Company and/or Affiliates with whom Contractor dealt, had contact or gained Confidential Information, or any employee or contractor of the Company and/or Affiliates, as the case may be, to:

    3.2.1   cease or otherwise modify its doing business, in whole or in part, with or through the Company and/or Affiliates; or

    3.2.2   do business with any other person, firm, partnership, corporation, or other entity which provides products or performs services materially similar to or competitive with those provided by the Company and/or Affiliates or accept any request from any such person or entity to do so.

3.3     **Non-Circumvention.** Contractor will not take any action to directly or indirectly interfere with, circumvent or attempt to circumvent, avoid, by-pass, or obviate the interest of Company and/or Affiliates with any individual or entity identified by Company and/or Affiliates as a client or potential client at any time during Contractor's business relationship with Company and/or Affiliates and for a period of twenty-four (24) months following the effective termination date of Contractor's business relationship with Company and/or Affiliates, for any reason, or otherwise benefit, either financially or otherwise from any Confidential Information (as defined in this Agreement) supplied to Contractor by Company and/or Affiliates to change, increase or avoid directly or indirectly payment of established or to be established fees or commissions, without the specific written approval of Company and/or Affiliates. Any violation of this condition shall be deemed an attempt to circumvent Company's and/or Affiliates' business relationship with such individual or entity, and Contractor shall be liable for damages in favor of Company and/or Affiliates.

Contractor Initial
Contract for KEITH YACKEY

3.4 **Tolling of Covenant Periods**. The time period provided by Section 3 shall not include, and shall be extended beyond, any time during which Contractor is failing to comply with any provision of this Agreement.

3.5 **Work Product Belongs to Company.** All databases, programming, software, code, and all other results and proceeds of Contractor's services performed pursuant to the Agreement (hereinafter the "Work") is to be deemed "work made for hire" as that expression is defined by the copyright laws of the United States. Company shall be the sole and exclusive owner and copyright proprietor of all rights and title in and to the Work, in whatever stage of completion. If for any reason the results and proceeds of Contractor's services are determined at any time not to be a "work made for hire", Contractor hereby irrevocably transfers and assigns to Company all right, title and interest therein, including all copyrights, as well as all renewals and extensions thereto.

3.6 **Website Registrations.** All websites created at the direction of Company, regardless of registrant or owner of record, shall belong to Company and Contractor shall immediately transfer title and administrative control upon Company's request for same. Contractor will not register or purchase any websites based on Confidential Information or Company knowledge and will relinquish administrative control and ownership immediately upon request from Company.

3.7 **Company's Retention of Confidential Information.** Contractor's use or creation of any Confidential Information, as defined in Section 3.1, relating to the Company shall inure to Company's benefit. All Confidential Information, or any reproductions or creations thereof (whether or not performed during the hours of service that would entitle Contractor to compensation hereunder), shall, notwithstanding their invention or use by the Contractor, be and remain the property of Company who shall be entitled to use and allow others to use such Confidential Information, subject to the provisions of this Agreement. Contractor hereby irrevocably and exclusively assigns to the Company, its successors, and assigns, all right, title, and interest in and to all such Confidential Information. All Confidential Information created by Contractor as part of its services under this Agreement shall be owned by the Company, and shall be returned to Company upon request. Any and all applicable passwords for access to Confidential Information created or used by Contractor shall be turned over to Company upon request. Contractor acknowledges and agrees that Contractor is being retained hereunder in order to facilitate the conduct of the Company's business using the Confidential Information, and Contractor will not claim a proprietary interest in any modifications of improvements to any of the Confidential Information that Contractor may develop, perfect, or invent during the term hereof.

4. **ARBITRATION.**

4.1 **Disputes Will be Arbitrated**. Any controversy between Contractor and the Company and/or Affiliates, or any of its respective owners, employees, contractors, officers, agents, clients, subsidiaries, affiliates, arising from or in any way related to this

Contractor Initial
Contract for KEITH YACKEY

Agreement, Contractor's business relationship with the Company and/or Affiliates, or the termination of Contractor's business relationship with the Company and/or Affiliates, shall be resolved exclusively by final and binding arbitration administered by the American Arbitration Association under its rules then applicable to the dispute. Any arbitration shall take place only in San Antonio, Texas, or as otherwise mutually agreed by the Parties.

5.   **MISCELLANEOUS.**

5.1   **Severability**. If any provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future laws effective during the term hereof, such provision shall be fully severable; and this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part hereof; and the remaining provisions hereof shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance herefrom. Notwithstanding any law to the contrary, the severance of any illegal, invalid or unenforceable provision shall not affect Company's and/or Affiliates' right to obtain money damages for Contractor's violation of any remaining enforceable provision(s). Furthermore, in lieu of such illegal, invalid, or unenforceable provisions there shall be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and be legal, valid, and enforceable and that shall not be more restrictive than the one severed herefrom.

5.2   **Noninterference With Third-Party Rights**. Contractor warrants and represents that, in entering into this Agreement and performing the obligations imposed by this Agreement, Contractor is not violating any contractual, fiduciary, or other legal duty which Contractor may owe to some other person with respect to confidential information or relationship. The Company and/or Affiliates have no interest in using any other company's or person's proprietary, confidential, or trade secret information in an unlawful manner. Contractor agrees that Contractor will not misapply the property of any other company or person to such information by accepting retainment by the Company and/or Affiliates or in the course of the relationship with the Company and/or Affiliates.

5.3   **Compliance With Laws.**

5.3.1   Each Party warrants and represents that it will comply and will cause its affiliates, contractors and sublicensees to comply with all applicable laws in connection with the performance of its obligations and other activities pursuant to this agreement, including without limitation, truth in product promotion and advertising laws, business opportunity statutes, The Federal Trade Commission Act of 1914, as amended, and U.S. Patent and Trademark statutes in its marketing, distributing, and selling efforts in connection with this Agreement.

5.3.2   Notwithstanding anything to the contrary in this Agreement, neither Party nor any of its affiliates shall be required to take, or shall be penalized for not taking, any action that is not in compliance with such Party's ethical business practices and policies or that such Party reasonably believes is

Contractor Initial
Contract for KEITH YACKEY

not in compliance with applicable laws.

5.4    **Indemnification.** In addition to any other remedies available to the Company under this Agreement, or at law or in equity, Contractor shall indemnify, defend and hold harmless the Company and Related Persons with respect thereto against and with respect to any and all claims, costs, damages, losses, expenses, obligations, liabilities, recoveries, suits, causes of action and deficiencies, including interest, penalties and reasonable attorneys' fees and expenses that such indemnitees shall incur or suffer, which arise, result from or relate to any breach of, or failure by the Contractor to perform, any of its representations, warranties, covenants or agreements in this Agreement. For purposes of this Agreement, "*Related Persons*" means all past, present and future directors, officers, members, managers, stockholders, employees, controlling persons, agents, professionals, attorneys, accountants, Affiliates, lenders or representatives of the Company.

5.5    **Independent Contractor Status.** This Agreement shall not render Contractor an employee, partner, agent of, or joint venture with the Company and/or Affiliates for any purpose. Contractor is and will remain an independent contractor in his or her relationship to the Company and/or Affiliates. The Company shall not be responsible for withholding taxes with respect to the Contractor's compensation hereunder. Contractor understands that the Company and/or Affiliates shall make no deduction for federal or state taxes from the compensation due to Contractor under this Agreement. Contractor acknowledges and understands that he or she is solely and totally responsible for the payment of all such taxes without reimbursement from the Company and/or Affiliates. Contractor shall have no claim against the Company and/or Affiliates hereunder or otherwise for vacation pay, sick leave, retirement benefits, social security, worker's compensation, health or disability benefits, unemployment insurance benefits, or employee benefits of any kind. Contractor acknowledges that Company requires attendance at certain events which are scheduled many weeks in advance and that attendance at those events is the primary reason for Company to contract the services of Contractor, therefore in the event Contractor cannot attend a certain event which Contractor is scheduled, Contractor shall provide sixty (60) days advance written notice of such nonparticipation. Failure to contact Company may result in Contractor not being scheduled for future Markets.

5.6    **Survival of Obligations.** The covenants in this Agreement shall survive termination of Contractor's retainment by the Company, regardless of who causes the termination or under what circumstances.

5.7    **Notices.** All notices required under this Agreement shall be made in writing and shall be deemed given (1) during Contractor's retainment, when delivered via interoffice mail or electronic mail and (2) following termination of Contractor, when posted by certified mail, return receipt requested, with proper postage prepaid and properly addressed, to the applicable Party's last known address.

5.8    **Related Parties.** This Agreement shall inure to the benefit of, and be binding upon, the Company and its parents or subsidiaries, joint ventures, clients, and affiliates,

Contractor Initial
Contract for KEITH YACKEY

together with their successors and assigns, and Contractor, together with Contractor's executor, administrator, personal representative, heirs, and legatees.

5.9    **Entire Agreement**.   This Agreement represents the entire Agreement of the Parties.   This Agreement merges and supersedes all prior and contemporaneous agreements, undertakings, covenants, or conditions, whether or oral or written, express or implied, between the Company and Contractor.

5.10    **Choice of Law**.   The waiver of the breach of any term or condition of this Agreement will not be deemed to constitute waiver of any other subsequent breach of the same or any other term or condition.   Unless prohibited by applicable law, this Agreement shall be governed by, and interpreted according to, the laws of the United States of America and the laws of the State of Texas applicable to agreements made between Texas residents in and for performance entirely in Texas.   The federal and state courts sitting in San Antonio, Texas shall be the exclusive courts in which venue for any suit relating to the terms, conditions, interpretation, or enforcement of this Agreement shall lay.

5.11    **Certificate of Understanding**.   Contractor certifies that: (i) he/she has received a copy of this Agreement for review and study before being asked to sign it, (ii) that he/she has the opportunity to consult with an attorney before signing, (iii) has had sufficient opportunity to ask questions regarding the Agreement and has received satisfactory answers from Company, and (iv) understands the Agreement and his/her obligations under this Agreement.

5.12    **Counterparts**.   This Agreement may be executed in multiple counterparts (including copies of original signatures sent by facsimile transmission or by electronic transmission in portable document format (pdf)), each of which shall be deemed an original and all of which together constitute one and the same instrument.

IN WITNESS WHEREOF, Contractor and Company have entered into and executed this Agreement.

CONTRACTOR:                                         COMPANY:
Keith Yackey,                                       EDUCATION MANAGEMENT
                                                    SERVICES, LLC


                                                    By: _____
Printed Name: KEITH YACKEY                          Name: Alfonso Robalin
Title: MASTER MENTOR                                Title: Director of Human Resources


Contractor Initial
Contract for KEITH YACKEY

## Exhibit A

### Affiliates of Education Management Services, LLC

Armando Montelongo Companies, Inc.
Lead Generation and Marketing, LLC
License Branding, LLC
Performance Advantage Group, Inc.
Real Estate Training International, LLC d/b/a Armando Montelongo Seminars
Internet Education, LLC

Contractor Initial 
Contract for KEITH YACKEY

## Exhibit B

Mentor will be compensated $1,250.00 on a weekly basis
Mentor will be reimbursed for all normal, reasonable and documented business travel per company policies and procedures.

Contractor will not receive any pay of any kind unless there is a current and signed W9 on file with Company's accounting department. Upon request Contractor will provide a complete W9. All Contractor payments are made five (5) weeks in arrears.

Contractor Initial
Contract for KEITH YACKEY

## Exhibit C

## CONTRACTOR'S DUTIES

Contractor duties are to mentor students through the flipping process.   Other business related duties may be assigned from time to time.

Contractor Initial

Contract for KEITH YACKEY